UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JAMES CHAPMAN, individually and d/b/a/ CHAPMAN'S LT PLUS, | ) ) ) | |
| Plaintiff, | ) ) | No.1:09-CV-247 |
| v. | ) ) | District Judge Edgar |
| | ) | Magistrate Judge Carter |
| MO BAHADORI, individually and d/b/a ouratlasstore, d/b/a wesellu4less, d/b/a bestatlesstore, d/b/a my_atlas_store, d/b/a getudeals, d/b/a welike2deal, d/b/a onlyontheweb, and/or d/b/a mycaldeals, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Default was entered in the instant case on January 20, 2010, and a motion for default judgment is pending [Doc. 6]. The District Court has referred this matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for an evidentiary hearing and a subsequent report and recommendation regarding (a) Plaintiff's request for a permanent injunction restraining defendant Bahadori, its officers, agents, servants, employees and attorneys and those persons in active concert or participation with them from infringing Plaintiff's patent pursuant to 35 U.S.C. § 283; (b) Plaintiff's request for judgment against Defendant Bahadori for patent infringement damages, including the amount of Bahadori's profits, and (c) Plaintiff's request for an award of reasonable attorneys' fees due to the exceptional nature of the case pursuant to 35 U.S.C. § 285.

# FINDINGS OF FACT

An evidentiary hearing was held for the purposes outlined above on June 8, 2010. Plaintiff and Plaintiff's counsel were present. Neither defendant nor his counsel were present. Plaintiff James Chapman and Sylvan Newby were the only witnesses to testify. Based on their testimony and the exhibits presented at the hearing, I make the following findings of fact:

1. Following the filing of a patent application on September 3, 2008, United States Letters Patent No. D593,427 (the " '427 Patent ") entitled "WATER RESISTANT METAL DETECTOR" was duly and legally issued on June 2, 2009, to Sui Ping Ping, a resident of China. [Doc. 1-1.]

2. Sui Ping Ping exclusively licensed the '427 Patent to Chapman, and the license of the '427 Patent was recorded at the U.S. Patent Office on April 14, 2009, at Reel/Frame 022540/0536 (the "License"). [Id.]

3. At all times relevant, Chapman has been the exclusive holder of the license to the '427 Patent and holds the legal right to recover for any and all past, present and future infringement thereof.

4. Chapman has authorized his business associate, Sylvan Newby ("Newby"), to import and sell water resistant metal detectors licensed under the '427 Patent.

5. In accordance with Chapman's authorization, in late 2008 Newby began importing and selling metal detectors that were licensed under the '427 Patent (the "Patented Metal Detectors").

6. In the Spring of 2009, Chapman and Newby discovered that Defendant Mo Bahadori ("Bahadori"), through his various companies, was selling

metal detectors on eBay that were identical to the Patented Metal Detectors.

7. Bahadori has infringed and continues to infringe the '427 Patent directly, contributorily and/or by inducement in this District and elsewhere by importing, selling and offering to sell the "Professional Under Water Scuba Diving Metal Detector" (PUWSDMD or "infringing metal detectors"), which falls under the claims of the '427 Patent, through various d/b/a's, namely ouratlasstore, wesellu4less, bestatlesstore, my_atlas_store, getudeals, welike2deal, onlyontheweb, and mycaldeals, on eBay.

8. Bahadori's infringing metal detector looks identical to the Patented Metal Detector and has the same features and functions, but the seal in Bahadori's infringing metal detector used to prevent water from coming inside the unit is of inferior quality and leaks. Because Bahadori's infringing metal detector looks identical to the Patented Metal Detector, Bahadori's infringing metal detector has been confused with the Patented Metal Detector which has subsequently received poor reviews on-line thereby unfairly damaging the reputation of the Patented Metal Detectors.

9. After discovering in June of 2009 that Bahadori was selling infringing metal detectors, Newby began checking the volume of infringing metal detectors Bahadori had sold through various eBay stores Bahadori controls. From his investigation Newby discovered that Bahadori, through various eBay stores, averaged sales of two (2) to four (4) infringing metal detectors per day at prices ranging from about $140.00 to $180.00.

10. Thereafter, Newby checked Bahadori's sales information

approximately once every two weeks.  In the course of his review, Newby determined that Bahadori's companies continued to sell two (2) to four (4) infringing metal detectors each day.

11.     Chapman and Newby noticed a significant decrease in their sales volume of the Patented Metal Detectors from June 2, 2009 to December 1, 2009.

12.     As a result of his advertising and offering the competing and infringing metal detectors for sale, Bahadori sold products to consumers who otherwise would have purchased the Patented Metal Detectors from Chapman or Newby.

13.     Under eBay's Verified Rights Owner (VeRO) program, unlicensed or infringing goods may be removed from eBay's website by request from the patent holder.  During the period following his discovery of Bahadori's sale of infringing metal detectors, Newby requested, with Chapman's authorization and on his behalf, that eBay delist or remove from its website numerous infringing metal detectors listed for sale by Bahadori's companies.

14.     Newby's requests for delisting of Bahadori's infringing metal detectors explicitly advised Bahadori of the existence of the '427 Patent.

15.     In response to Newby's request for delisting, on or about August 5, 2009, eBay began removing Bahadori's listing for the infringing metal detectors from its website.  [Doc. 1-2.]

16.     Bahadori responded to eBay's delisting by filing several Counter-Notices Regarding Removed Listings ("Counter-Notices") with eBay on or about August 6, 2009 stating under penalty of perjury that he was fully authorized to sell

the infringing metal detectors. [Doc. 1-3.] eBay then allowed Bahadori to relist for sale his infringing metal detectors pursuant to its policy.  It is eBay's policy that once the alleged patent infringer states under penalty of perjury that his or her product does not infringe a patent as alleged, then eBay will allow the allegedly infringing product to be relisted for sale.  At that point, according to eBay's policy, it will not delist the infringing product until a court order is entered enjoining the infringing party from listing the infringing product for sale.

17. Bahadori continued to list infringing metal detectors for sale on eBay, and since Chapman had no way to stop those sales through the VeRO program without obtaining an injunction from a court, Chapman filed his Complaint to prevent Bahadori from continuing to infringe the '427 Patent.  In mid-December 2009, Bahadori discontinued sales of the infringing metal detectors, but, without a court injunction, there is nothing to prevent Bahadori from relisting the infringing metal detectors for sale whenever he wants to do so.

18. Based on a conservative figure of at three sales per day (the average of 2 to 4 sales per day), Bahadori sold approximately 540 infringing metal detectors on eBay from June 2, 2009 to December 2, 2009.

19. Chapman's cost of goods for Patented Metal Detectors delivered to the United States from June, 2009 to present is $75.00 per unit.

20. Chapman's average selling price for Patented Metal Detectors on eBay from June 2009 to present is $208.00 per unit.

21. Chapman's fees charged by eBay and PayPal associated with the sale of the Patented Metal Detectors from June, 2009, to present are

approximately $21.16 per unit. The units are made in China, and the costs for customs and warehousing are $23.84 per unit.

22. Based on the above-noted costs and taking into account customs, transportation and warehousing fees, Chapman's profit for the sale of Patented Metal Detectors is $88.00 per unit.

23. In light of Bahadori's average sales history from June 2, 2009 to December 1, 2009, the profit on 540 infringing metal detectors at an average profit of $88.00 per unit totals $47, 520.00.

24. Bahadori sold and offered to sell its infringing metal detectors in this District, and Bahadori shipped at least one of his infringing metal detectors to Ooltewah, Tennessee after Plaintiff's employee ordered one to compare it to the Patented Metal Detector. [Doc. 1-5.]

25. In light of Bahadori's Counter-Notices to eBay claiming he has not infringed the '427 Patent and, in the absence of an injunction prohibiting such actions, it is likely Bahadori will decide to relist the infringing metal detector thereby continuing to infringe the '427 Patent.

26. A permanent injunction would allow Chapman to present eBay with a valid basis to prohibit Bahadori from selling further infringing metal detectors on its website.

27. In the absence of a permanent injunction, Chapman likely will incur significant additional legal fees and expenses to halt Bahadori's future infringement of the '427 Patent and may face additional harm to his business reputation as a result of Bahadori's infringement.

28. In the absence of a permanent injunction, the judicial system likely will expend substantial resources in the future as a result of Bahadori's infringement of the '427 Patent.

29. Bahadori will not be harmed by the issuance of a permanent injunction enjoining him from infringing the '427 Patent.

30. It is in the public interest to prohibit ongoing infringement of patents validly issued by the U.S. Patent Office.

## CONCLUSIONS OF LAW

A. **Jurisdiction Subject Matter**

This Court has subject matter jurisdiction pursuant to the provisions of 28 U.S.C. § 1331 and 1338 because Chapman's cause of action is a federal question and an action arising under an act of Congress relating to patents.

B. **Elements of Patent Infringement Claim**

1. Title 35, section 271 of the United States Code provides, in pertinent part, that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent thereof, infringes the patent." 35 U.S.C. § 271(a).

2. Patents issued by the United States Patent and Trademark Office carry a presumption of validity. 35 U.S.C. § 282; Alco Standard Corp. v. Tenn. Valley Auth., 597 F. Supp. 133, 145 (W.D. Tenn. 1984).

3. The test for assessing design patent infringement is whether an ordinary observer who is familiar with the prior art would be deceived into believing that the alleged infringing design is the same as the patented design and "'embodies the patented design or

any colorable imitation thereof.'" Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 678-79 (Fed. Cir. 2008) (quoting Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998); see also Gorham Co. v. White, 81 U.S. 511 (1871); Schnading Corp. v. Gaines Manuf. Co., 494 F.2d 383, 391 (6th Cir. 1974); Parker Sweeper Co. v. The E.T. Rugg Co., 474 F.2d 950, 956-57 (6th Cir. 1973).

4. In a claim for patent infringement, the burden of proof is on the plaintiff alleging infringement. Alco Standard Corp., 597 F.Supp. at 141. Infringement must be demonstrated by a preponderance of the evidence. Egyptian Goddess, Inc., 543 F.3d at 679.

5. Chapman's complaint sufficiently states a claim for patent infringement of the '427 Patent against defendant Bahadori.

6. As a result of Bahadori's infringement of the '427 Patent, Chapman is entitled to damages.

**C.  Damages**

7. Under title 35, section 284 of the U.S. Code, "[u]pon a finding for the claimant the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The court may increase the damages award up to three times the amount found or assessed. Id.

8. A plaintiff may obtain as damages profits on sales he would have made in the absence of the infringement, "i.e., the sales made by the infringer," if he proves: 1) there is demand for the patented product; 2) the absence of any acceptable noninfringing substitutes;

3) his ability through manufacturing and marketing to exploit the demand; and 4) the amount of profit he would have made in the absence of the infringement. Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (6th Cir. 1978).

9. Chapman has proven there is demand for his product, as demonstrated by the volume of sales of both the Patented Metal Detector and Bahadori's infringing metal detector on eBay.

10. Because of the unique nature and features of the Patented Metal Detector, there are no acceptable noninfringing substitutes for it.

11. Chapman and his business associate, Newby, have a demonstrated ability to exploit the demand for the Patented Metal Detectors, as proven by their consistent and ongoing sales of the Patented Metal Detectors.

12. In the absence of Bahodori's infringement, Chapman would have sold at least 540 additional Patented Metal Detectors, the number Bahadori sold, at a profit of $88.00 per unit or $ $47, 520.00 total.

13. Bahadori's infringement of the '427 Patent was knowing, willful and intentional, as demonstrated by his submission of the Counter-Notices to eBay and his ongoing offer to sell infringing metal detectors after receiving notice of his infringement.

14. As a result of Bahadori's knowing, willful and intentional infringement of the '427 Patent, the amount of damages owed to Chapman should be trebled, for a total damages amount of $142,560.00.

15. In assessing damages for patent infringement, "prejudgment interest ordinarily should be awarded…absent some justification for withholding such an award." General Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983).

16. Because no federal statute mandates a specific prejudgment interest rate, the Court should apply the maximum rate for prejudgment interest under Tennessee law, which is ten percent (10%) per annum. Wackenhut Serv., Inc. v. Int'l Guards Union of Am., Local No. 3, No. 3:08-cv-304, 2010 WL 1491439, at *7-8 (E.D. Tenn. Apr. 12, 2010); Tenn. Code Ann. § 47-14-123.

17. Bahadori began infringing the '427 Patent no later than June 2, 2009.

18. Chapman is entitled to receive prejudgment interest on the total damages award of $142,560.00 at the statutory rate of ten percent (10%) from December 15, 2009, until the date of the Court's entry of its judgment assessing damages.

19. Chapman further is entitled to receive post-judgment interest on the total damages award from the date of the Court's entry of its judgment assessing damages until the total damages amount is paid in full, as specified in 28 U.S.C. § 1961.

20. As the prevailing party, Chapman is entitled to recover all costs incurred in this lawsuit pursuant to Rule 54 (d)(1) of the Federal Rules of Civil Procedure.

21. Plaintiff stated in the June 8, 2010 evidentiary hearing that he no longer seeks attorney's fees nor would the undersigned be inclined to recommend them because this case is not extraordinary as is required to award attorney's fees pursuant to 35 U.S.C. § 285.

**D.    Injunctive Relief**

22. A court may grant injunctive relief "in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

23. A plaintiff seeking a permanent injunction in a patent infringement case must demonstrate: 1) that he has suffered or will suffer irreparable harm; 2) that there is no

adequate remedy at law that is ["practical and efficient to the ends of justice and its prompt administration;"] 3) that the balancing of hardships between the plaintiff and defendant weighs in favor of injunctive relief; and 4) that the public interest will not be disserved by the injunction. Smith & Nephew, Inc. v. Synthes (U.S.A.), 466 F. Supp.2d 978, 982-85 (W.D. Tenn. 2006); eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

24. The decision to grant or deny a permanent injunction is within the sound discretion of the district court. eBay Inc., 547 U.S. at 391.

25. Chapman has suffered irreparable harm and will likely suffer even greater irreparable harm if Bahadori is not permanently enjoined from infringing the '427 Patent.

26. Chapman has no adequate remedy at law that is practical and efficient to the ends of justice and its prompt administration.

27. The balancing of the hardships to Chapman and Bahadori weighs in favor of issuance of a permanent injunction, as Bahadori will not face hardship if he is enjoined from further infringing the '427 Patent.

28. It is in the public interest to permanently enjoin Bahadori from infringing the '427 Patent.

29. Bahadori should be permanently enjoined from any further activity that infringes the '427 Patent.[1]

SO ORDERED.

ENTER:

Dated: June 16, 2010         s/William B. Mitchell Carter
                             UNITED STATES MAGISTRATE JUDGE

---

[1]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(a). Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).